IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION

NUCOR STEEL – ARKANSAS  PLAINTIFFS
A division of Nucor Corporation
and
NUCOR-YAMATO STEEL COMPANY

V.   NO. 3:15cv333-JLH

REGINA MCCARTHY,  DEFENDANTS
Administrator, United States
Environmental Protection Agency
and
UNITED STATES ENVIRONMENTAL
PROTECTION AGENCY

## COMPLAINT

### INTRODUCTION

1.   This is an action for declaratory judgment and injunctive relief against the *ultra vires* actions of Regina McCarthy, as Administrator of the Environmental Protection Agency ("EPA"), and the EPA that are currently inflicting substantial irreparable injury on Plaintiffs Nucor Steel – Arkansas, a division of Nucor Corporation, and Nucor-Yamato Steel Company (collectively "Nucor").

This case assigned to District Judge Holmes
and to Magistrate Judge Deere

### PARTIES

2.   Nucor Steel – Arkansas ("NSA") operates a steel mill located at 7301 East County Road 142, near Blytheville, in Mississippi County, Arkansas. NSA operates its mill pursuant to ADEQ Operating Air Permit No. 1139-AOP-R19, as well as other permits issued by ADEQ. NSA's mill has been subject to review under the Prevention of Significant Deterioration ("PSD") provisions of the Clean Air Act and Arkansas Pollution Control &

Ecology Commission ("APC&EC") Reg. 19, Chapter 9. NSA's air permit is issued pursuant to the Part 70 Operating Permit regulations of the Clean Air Act, and APC&EC Reg. 26

3.  Nucor-Yamato Steel Company ("NYS") operates a steel mill located at 5929 East Highway 18, near Blytheville, in Mississippi County, Arkansas. NYS operates its mill pursuant to ADEQ Operating Air Permit No. 0883-AOP-R10, as well as other permits issued by ADEQ. NYS's mill has been subject to review under the PSD provisions of the Clean Air Act and APC&EC Reg. 19, Chapter 9. NYS's air permit is issued pursuant to the Part 70 Operating Permit regulations of the Clean Air Act, and APC&EC Reg. 26

4.  Defendant Regina McCarthy is Administrator of the U.S. Environmental Protection Agency and is responsible for directing the activities of the agency and implementing the requirements of the Clean Air Act ("CAA"). All actions challenged in this case were taken pursuant to McCarthy's direct or indirect order and under the color of her office.

5.  Defendant U.S. Environmental Protection Agency is a federal regulatory agency administered by Defendant McCarthy. "EPA" refers to both the U.S. Environmental Protection Agency and Administrator McCarthy in her official capacity.

## JURISDICTION AND VENUE

6.  This Court has subject-matter jurisdiction pursuant to 28 U.S.C. § 1331 because Defendants' actions undertaken in asserted reliance on federal law exceed their delegated authority, contravene specific statutory prohibitions, will cause burdensome expense to be passed along to Plaintiffs by law, *see* Ark. Code Ann. §23-4-501, and are currently inflicting substantial irreparable injuries on Plaintiffs, for which they have no other adequate prospect of relief. *See generally Leedom v. Kyne*, 358 U.S. 184 (1958).

7.  Plaintiffs and other parties attempted to obtain relief from the EPA's proposed Regional Haze Rule Federal Implementation Plan ("FIP") for the State of Arkansas by seeking to intervene in the related case *Sierra Club v. Regina McCarthy*, No. 4:14-CV-00643 JLH to challenge the EPA and Sierra Club's collusive attempts to set a binding deadline for the illegal and statutorily prohibited issuance of the FIP. This Court denied Plaintiffs' Motion to Intervene, holding that the State of Arkansas, through the Arkansas Attorney General, adequately represented Plaintiffs' interests in the matter. That decision denying Plaintiffs' Motion to Intervene supports this Court's exercise of residual § 1331 jurisdiction pursuant to *Leedom*. *See* 358 U.S. at 190-91.

8.  CAA § 307, 42 U.S.C. § 7607, does not displace or limit the Court's jurisdiction under 28 U.S.C. § 1331.

9.  Venue is proper under 28 U.S.C. § 1391(e)(1) because Plaintiffs' facilities are located in this District and there is no real property at issue.

## BACKGROUND

**A. EPA has committed *ultra vires* actions by proposing to implement a Federal implementation plan beyond the clear statutory deadline.**

10. In 1999, the EPA promulgated the Regional Haze Rule, which calls for state and federal agencies to work together to improve visibility in 156 national parks and wilderness areas, including the Upper Buffalo and Caney Creek wilderness areas located in Arkansas. 40 C.F.R. Part 51.

11. The Regional Haze Rule required States, in coordination with the EPA, the National Park Service, U.S. Fish and Wildlife Service, the U.S. Forest Service, and other

interested parties, to develop and implement State implementation plans ("SIP") to reduce the pollution that causes visibility impairment.

12. Under the Regional Haze Rule, States were required to develop Regional Haze SIPs to submit to EPA by December 17, 2007.

13. In May 2008, the Arkansas Department of Environmental Quality ("ADEQ") submitted the Arkansas Regional Haze SIP to EPA for approval.

14. In September 2011, ADEQ submitted a revision to the proposed Arkansas Regional Haze SIP to EPA.

15. On October 17, 2011, EPA published notice of its proposed partial disapproval of the proposed Arkansas Regional Haze SIP. 76 F.R. 64186. Among other things, EPA claimed that Arkansas failed to comply with certain legal and regulatory requirements in establishing Best Available Retrofit Technology ("BART").

16. On March 12, 2012, EPA issued its final partial disapproval of the proposed Arkansas Regional Haze SIP. 77 F.R. 14604.

17. CAA Section 110(c)(1), 42 U.S.C. § 7410(c)(1) provides that

The Administrator shall promulgate a Federal implementation plan at any time within 2 years after the Administrator –

(A) Finds that a State has failed to make a required submission or finds that the plan or plan revision submitted by the State does not satisfy the minimum criteria established under section 110(k)(1)(A), or

(B) Disapproves a State implementation plan submission in whole or in part, unless the State corrects the deficiency, and the Administrator approves the

plan or plan revision before the Administrator promulgates such Federal implementation plan.

18. Congress intended Section 110(c)(1) to constitute an explicit deadline limiting EPA's authority to issue a FIP to the applicable two-year period.

19. Thus, pursuant to CAA Section 110(c)(1), 42 U.S.C. § 7410(c)(1), the EPA had until March 12, 2014 to either approve a revision to the Arkansas Regional Haze SIP or to issue a Regional Haze FIP.

20. EPA failed to meet its statutory deadline to issue the Regional Haze FIP.

21. Pursuant to the plain language of CAA Section 110(c)(1), 42 U.S.C. § 7410(c)(1), once the March 12, 2014 deadline passed, EPA lost its statutory right to issue the Regional Haze FIP.

22. On April 8, 2015, more than three years after the EPA's partial disapproval of the Arkansas SIP, EPA published notice of its proposed Regional Haze FIP for Arkansas in the Federal Register. 80 F.R. 18944.

23. EPA intends to promulgate the final Regional Haze FIP sometime in 2016.

24. By seeking to issue a FIP more than two years after its partial disapproval of the Arkansas SIP, EPA is in direct contravention of the deadlines stipulated in CAA Section 110(c)(1), 42 U.S.C. § 7410(c)(1).

25. By seeking to issue a FIP in contravention of the deadlines stipulated in CAA Section 110(c)(1), 42 U.S.C. § 7410(c)(1), EPA ignores and fails to give effect to the statutory language requiring it to issue the FIP "within 2 years" of disapproving the State SIP.

26. By proposing and noticing a FIP beyond the two-year statutory deadline, EPA has violated a clear statutory mandate and has plainly exceeded its statutory authority under the CAA and is, therefore, *ultra vires*.

**B. EPA's *ultra vires* actions will harm Plaintiffs**

27. The proposed FIP calls for the installation of scrubbers on three coal-fired power plants in Arkansas, namely, Flint Creek (operated by American Electric Power – Southwestern Electric Power Company), White Bluff (operated by Entergy Arkansas, Inc.) and Independence (operated by Entergy Arkansas, Inc.).

28. The cost of the installation of the scrubbers at the Flint Creek, White Bluff and Independence facilities will greatly exceed $1 billion.

29. Arkansas Electric Cooperative Corporation ("AECC") owns 50% of the Flint Creek facility, 35% of the White Bluff facility and 35% of the Independence facility and will pay a proportional share of the cost of the scrubbers to be installed at the Flint Creek, White Bluff and Independence facilities.

30. Plaintiffs operate two steel mills in Mississippi County, Arkansas that use the electric arc furnace ("EAF") method of steel-making, which is an energy intensive process that requires large amounts of electric power.

31. Both Nucor facilities purchase electric power for their EAFs and the rest of the plant operations from their local electric co-op, Mississippi County Electric Cooperative, which in turn gets its power from AECC.

32. Together, the two Nucor facilities account for 20-30% of the total load on the entire AECC system.

33.     The costs incurred by AECC from EPA's unlawful promulgation of the untimely Regional Haze FIP will be passed on proportionally to its local co-op members, which will pass those costs on to their members (including Plaintiffs) through electric rate increases.

34.     EPA's unlawful promulgation of the untimely Regional Haze FIP will directly result in the increase of energy costs of tens or hundreds of millions of dollars for Plaintiffs.

35.     Plaintiffs have legally protectable interests in preserving the value of their property and in the continued viability of their agreements with AECC.

36.     A swift determination of EPA's authority to issue the Regional Haze FIP beyond the statutory deadline set out in CAA Section 110(c)(1) is in the interest of justice and judicial economy.

37.     Plaintiffs will suffer economic harm prior to the final promulgation of the Regional Haze FIP.

38.     Upon information and belief, the Flint Creek, White Bluff and Independence facilities will need to begin planning and outfitting the facilities in anticipation of the implementation of the Regional Haze FIP before the FIP is officially promulgated. The costs of these measures will be passed down to Plaintiffs regardless of whether the FIP is ultimately issued.

39.     The longer it takes for EPA's actions to be declared unlawful, the greater the costs of anticipatory implementation become, resulting in more substantial rate increases for Plaintiffs.

40.     Moreover, the process of commenting on and ultimately challenging the final FIP will require significant resources from Plaintiffs. A determination that EPA does not have the authority to issue the FIP in the first instance will allow Plaintiffs to avoid these costs.

41.     The burdensome cost resulting from EPA's unlawful issuance of the Regional Haze FIP greatly outweighs any supposed benefit derived therefrom. Upon information and belief, visibility in Arkansas is currently in compliance with the requirements of the Regional Haze Rule and visibility in the state continues to improve, regardless of the fact that the prohibitively expensive scrubbers and pollution control equipment sought by EPA have not been installed.

## CLAIMS FOR RELIEF

### COUNT I: DECLARATORY RELIEF

42.     Paragraphs 1 through 41 are incorporated herein by reference as if set forth in full.

43.     An actual controversy exists between Defendants and Plaintiffs regarding the lawfulness of the EPA Regional Haze FIP under the Clean Air Act.

44.     Plaintiffs are entitled to a declaration of their rights under the Clean Air Act pursuant to 28 U.S.C. §§ 2201 and 2202.

### COUNT II: INJUNCTIVE RELIEF

45.     Paragraphs 1 through 41 are incorporated herein by reference as if set forth in full.

46.     Plaintiffs have a strong likelihood of success on the merits of this case because Defendants' action is plainly unlawful and the Plaintiffs lack meaningful and adequate opportunity for judicial review in light of the anticipatory measures that must be undertaken by the energy industry in Arkansas to comply with the Regional Haze FIP. The costs of these measures will be passed down to Plaintiffs regardless of whether the FIP is ultimately issued.

47.     For the same reasons enumerated in Paragraph 46 directly above, Plaintiffs are suffering irreparable injury as a result of Defendants' unlawful actions.

48.     Defendants will suffer no injury if they are enjoined.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiffs pray the Court grant them the following relief:

A. A declaration that Defendants lack authority to issue the Regional Haze FIP and that Defendants' attempts to do so violates the Clean Air Act Section 110(c)(1), 42 U.S.C. § 7410(c)(1) and is *ultra vires*;

B. A preliminary injunction preventing Defendants from promulgating and enforcing the proposed Regional Haze FIP;

C. A permanent injunction forbidding Defendants from promulgating and enforcing the proposed Regional Haze FIP; and

D. Such other relief as the Court deems just and proper.

Respectfully submitted,

David R. Taggart, T.A.
Jerald N. Jones
BRADLEY MURCHISON KELLY & SHEA LLC
401 Edward Street, Suite 1000
Shreveport, LA  71101-5529
Phone: (318) 227-1131
Fax:    (318) 227-1141
Email: dtaggart@bradleyfirm.com
Email: jjones@bradleyfirm.com

And

Mark H. Allison
Gary B. Rogers
T.J. Lawhon
DOVER DIXON HORNE, PLLC
Suite 3700
425 West Capitol Avenue
Little Rock, Arkansas 72201
Phone: (501) 375-9151
Fax: (501) 375-6484
Email: mallison@ddh-ar.com

Email: grogers@ddh-ar.com
Email: tlawhon@ddh-ar.com

By: _____Mark H. Al[signature]_____

Attorneys for Nucor Steel-Arkansas and Nucor-Yamato Steel Company

Email: grogers@ddh-ar.com
Email: tlawhon@ddh-ar.com

By: _____ *Mark H. A[signature]* _____

Attorneys for Nucor Steel-Arkansas and Nucor-Yamato Steel Company